IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RONALD EUGENE PARKER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:08-CV-245 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR WRIT OF HABEAS CORPUS

Petitioner RONALD EUGENE PARKER has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 251st District Court of Potter County, Texas for the offense of aggravated assault with a deadly weapon. For the reasons set forth below, it is the opinion of the undersigned United States Magistrate Judge that petitioner's federal application for habeas corpus relief be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In December of 2004, a guest staying at the Route 66 Motel in Amarillo, Texas reported to the motel owner that the man staying in room 54 had stolen jewelry from her room. (Reporter's Record [hereinafter RR], vol. 4, pg. 12). Mahendra Patel, the motel owner, knew the man staying in room 54 and went to confront him about the theft. (*Id.*, pg. 13). When Patel got to the room, he discovered two men — the man who was supposed to be there and the petitioner, who was a friend

of the room's occupant.  (*Id.*, pg. 14).  Because petitioner was not registered as a guest of the room, which was motel policy, Patel asked him to leave.  (*Id.*, pg. 15).

Evidence at the trial indicated petitioner refused to leave.  (*Id.*).  Instead, he violently confronted Patel, cursing at and spitting on him several times. (*Id.*, pgs. 17, 22).  Patel left the room and went in the direction of the motel office to call the police.  (*Id.*, pg. 19).  Petitioner followed Patel, continuing to curse at and spit on him.  (*Id.*, pg. 22).  Petitioner shouted that he was going to attack and shoot Patel.  (*Id.*, pg. 68).  Just before Patel reached the office, petitioner pulled a "silver or chrome-plated handgun" from his back right pocket, pointed it at Patel, and said, "I'm going to shoot you."  (*Id.*, pgs. 19-20, 71).  Then, for no apparent reason, petitioner walked away.  (*Id.*, pgs. 25, 71).  He went around the back of the motel and Patel went into the motel office and called the police.  (*Id.*, pg. 25).  By the time police arrived, or shortly thereafter, petitioner had come out from the back of the motel.  (*Id.*, pgs. 29, 84, 96).  The police performed a pat-down of petitioner and conducted a thorough search of the back of the motel, but never found a firearm.  (*Id.*, pgs. 132-33).

In August 2005, a jury found petitioner guilty of aggravated assault with a deadly weapon and sentenced him to thirty-five years in prison.  Petitioner's conviction was affirmed on direct appeal, after his appointed appellate counsel filed an *Anders* brief.  *Parker v. State*, No. 07-05-0313-CR, 2007 WL 1610063 (Tex. App.—Amarillo June 5, 2007, pet. ref'd).  His petition for discretionary review was refused.  In September 2008, petitioner filed his first state habeas corpus application, *In re Parker*, WR-70,928-01, which was denied without written order on November 26, 2008.  *Id.*  Petitioner's second state habeas corpus application, filed October 6, 2008, was likewise denied without written order on December 31, 2008.  *In re Parker*, WR-70,928-02.  Petitioner's

federal habeas corpus petition followed.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner appears to contend he is being held in violation of the Constitution and laws of the

United States for the following reasons:

1.      The evidence at trial was legally insufficient.

2.      Petitioner received ineffective assistance from his trial attorney because his attorney
        failed to:

        a.      conduct an adequate pre-trial investigation;
        b.      move for an instructed verdict at the close of the state's case in chief;
        c.      object to a dynamite charge given during the punishment phase of trial;
        d.      investigate the validity of the enhancement paragraphs in the indictment;
        e.      object to the use of the enhancement paragraphs during the punishment
                phase.[1]

3.      Petitioner received ineffective assistance from his appellate attorney because his
        attorney filed an *Anders* brief and failed to raise specific issues on appeal.

4.      Petitioner's due process rights were violated by the Amarillo Police Department's
        inadequate investigative procedures.

5.      Petitioner's due process rights were violated by the court reporter's failure to
        transcribe in the Reporter's Record improper comments the trial judge made to the
        jury.

6.      Petitioner is actually innocent.

7.      Petitioner's due process rights were violated because the prosecutor failed to correct
        the perjured testimony of its witnesses.

## III.
## STANDARD OF REVIEW

Petitioner may not obtain habeas corpus relief in this Court with respect to any claim

---

[1] Petitioner originally also included an allegation that his attorney was ineffective by failing to move for a mistrial based upon the prosecution's knowing use of perjured testimony. Respondent contended the issue was not exhausted because it was not raised before any state court. Because petitioner did not include this ground in his amended petition, the Court considers it dropped.

adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to clearly established federal constitutional law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).All factual determinations made by a state court are presumed to be correct; petitioner can rebut such presumption only by clear and convincing evidence.  *Id.* § 2254(e).  When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, and is therefore entitled to the resumption of correctness.  *Id.*; *Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

Here, the Texas Court of Criminals Appeals denied petitioner's application for state habeas relief without a written order, which constituted an adjudication on the merits.  28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.  Petitioner's burden is significantly heightened in that petitioner cannot prevail even if it is shown the state court's determination was incorrect.  Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts.  *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied Neal v. Epps*, 537 U.S. 1104 (2003).

Petitioner has failed to meet this burden.  Rather than advancing any argument against the state court's denial of relief and/or explaining why the state court's determination was incorrect, petitioner merely restates the points of error he presented to the state court.  As detailed below, there is nothing in the record indicating the state court acted in a manner warranting federal habeas corpus relief.

IV.
REVIEW OF PETITIONER'S ALLEGATIONS

*A.  Legal Sufficiency of the Evidence*

Petitioner first contends the evidence was legally insufficient to support the conviction.  On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which reflects the federal constitutional due process standard.  This standard requires only that the federal court determine, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319, 99 S.Ct. at 2789.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).

In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the factfinder.  *Id.*  The responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" belongs with the factfinder alone.  *Id.*  "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."  *Id.*  "[T]o make this determination, a court must refer to the substantive elements of the criminal offense as defined by state law."  *Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

Petitioner Parker was convicted of aggravated assault with a deadly weapon under Texas Penal Code § 22.02.  Under that statute, petitioner's conviction required proof beyond a reasonable doubt that (1) a person; (2) intentionally, knowingly, or recklessly threatened another with imminent

bodily injury; and (3) used or exhibited a deadly weapon during the commission of the assault. Under Texas law, a "deadly weapon" is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(A) (Vernon 2003).

Parker's only contention under this point of error is that the state failed to prove the third element of the offense, i.e., that he exhibited a deadly weapon during the incident. He argues, "beyond lay testimony describing the alleged handguns [sic] size and color, there is nothing in the record to support the jury's conclusion that the petitioner did infact [sic] exhibit a deadly weapon or any object that conformed to the statutory definition of a firearm." (*Amended Petition for Writ of Habeas Corpus*, doc. 10, filed Sept. 11, 2009 [hereinafter *Amended Petition*], pg. 11).

Petitioner further contends the state failed to prove he threatened Patel with an object "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." (*Id.*). Parker's argument, however, fails to acknowledge the State did not have to prove the "manifestly designed" element if it was proved petitioner exhibited a firearm. *See* Tex. Pen. Code Ann. § 1.07(a)(17)(A) (defining a deadly weapon as *either* a firearm *or* something other than a firearm designed for bodily injury). Handguns are traditionally considered a type of firearm, *see id.* § 46.01(5), and petitioner has not pointed to any case or statute indicating otherwise. Firearms are per se deadly weapons. *Id.* § 1.07(a)(17)(A). Therefore, any evidence, including eyewitness testimony, that petitioner displayed a handgun during the commission of an assault was sufficient to support a determination petitioner exhibited a deadly weapon during the commission of an assault.

At trial, three witnesses testified petitioner pointed a handgun at Patel. Two other witnesses

testified they did not see petitioner point a handgun at Patel.[2]  One of petitioner's witnesses testified she went back to her room soon after the argument began and was not observing the altercation, but heard petitioner say he was going to shoot Patel.  (RR, vol. 4, pgs. 109, 113).  The other one of petitioner's witnesses changed her story multiple times as to where she was standing when the fight took place – in one version, she was standing across a four-lane street, approximately 200 feet away from the scene.  (*Id.*, pg. 157).  Of the three witnesses who testified for the State that petitioner had displayed a handgun, one was two feet away from petitioner, one was five feet away, and the other was ten feet away when they each saw petitioner display a handgun.  (*Id.*, pgs. 23, 71, 92).

It was within the jury's province to resolve this conflict in the testimony.  The jury resolved it by determining the two witnesses who did not see a handgun were either mistaken, unable to see, up close, the altercation unfolding, or their testimony was otherwise not credible, and the police's failure to discover a gun did not exclude the possibility petitioner had actually displayed one.  This Court cannot overturn that resolution of the conflict in the testimony.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found petitioner exhibited a handgun, which they determined was a deadly weapon, during the course of assaulting Patel.  *Id.*, 99 S.Ct. at 27893.  There was legally sufficient evidence to support the conviction, and petitioner has not shown how the state court's determination of that issue was contrary to constitutional law or constituted an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.  Petitioner's first

---

[2]  One of the witnesses testified she went back to her room soon after the argument began and was not observing the altercation, but heard petitioner say he was going to shoot Patel.  (RR, vol. 4, pgs. 109, 113).  The other witness changed her story multiple times as to where she was standing when the fight took place—in one version, she was standing across a four-lane street, approximately 200 feet away from the scene.  (*Id.*, pg. 157).  The three witnesses who testified petitioner had displayed a handgun were two feet, five feet, and ten feet away from the petitioner.  (*Id.*, pgs. 23, 71, 92).

point is without merit.

## B. Ineffective Assistance of Trial Counsel

Petitioner next contends he received ineffective assistance of trial counsel in several aspects. The proper standard for judging a petitioner's contention he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. *Id.* That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly differential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense. To establish this prong, a petitioner must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

1.  Failure to Conduct Pre-Trial Investigation

Petitioner first contends his trial counsel failed to conduct an adequate pre-trial investigation because (I) he failed to attempt to locate and interview several people who witnessed the altercation and (ii) he failed to hire an investigator.  Because the decision of which witnesses to call at trial is essentially one of strategy, such claims are looked upon with disfavor.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)).  In order to prevail on a claim of ineffective assistance for failure to call a witness, a petitioner must show the witnesses were available and willing to testify.  *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *Gomez v. McKaskle,* 734 F.2d 1107, 1110 (5th Cir. 1984). Additionally, a petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have thereby benefitted.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart*, 782 F.2d at 1282.  A petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

In this case, petitioner contends his attorney should have contacted Thomas "Drew" Gibbs, Joyce Ammons, Kenneth Graves, and Karen Payne because they witnessed the altercation but never affirmatively stated in their witness statements they saw petitioner brandish a handgun.  At trial, a police officer testified he attempted to locate Ammons, Graves, and Payne to testify on behalf of the prosecution but was unable to do so.  (RR, vol. 4, pgs. 129-30).  Petitioner provides nothing contradicting the police officer's testimony and/or indicating these three witnesses were available and willing to testify.  Petitioner likewise fails to demonstrate Gibbs was available and willing to testify.  As respondent points out, petitioner fails to prove Gibbs even witnessed the event.  In fact,

petitioner provides nothing more than his unstated assumption these four people were willing to testify on his behalf.  Petitioner's mere allegations, especially in light of the fact that the police were unable to locate three of the four witnesses petitioner names, are insufficient to create an ineffective assistance of counsel claim for failure to call a witness.  *See Wilkerson*, 950 F.2d at 1065.

Petitioner additionally contends his attorney should have hired an investigator to "photograph the area in which the prosecution implied to the jury where a firearm could have benn [sic] hidden."  (*Amended Petition*, pg. 12).  According to petitioner, such pictures would have revealed there was nowhere to hide a gun behind the motel.  (*Id.*).  Petitioner fails, however, to demonstrate his defense would have benefitted from his attorney obtaining photographs of the back of the motel.  *See Nelson*, 989 F.2d at 850.  Rather, petitioner merely alleges the photographs would have been beneficial to his defense.  Considering a police officer's testimony at trial that "there were a lot of places that [a handgun] could have been hidden" behind the motel, petitioner's assumption that pictures would have benefitted his defense is not well founded.  (RR, vol. 4, pg. 122).  In any event, petitioner has not presented any evidence in support of his claim showing any pictures would have established what he alleged, and his allegation alone is insufficient to sustain an ineffective assistance of counsel claim.  *See id.*

## 2.  Failure to Move for an Instructed Verdict

Petitioner next contends he received ineffective assistance of counsel because his trial attorney failed to move for an instructed verdict of not guilty after the state closed its case-in-chief.  Under Texas law, a motion for an instructed verdict is a challenge to the legal sufficiency of the evidence.  *Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990).  As set forth in Section IV.A above, the evidence was legally sufficient to support the verdict because the state presented

testimony supporting each of the elements of aggravated assault with a deadly weapon. Petitioner has not shown his attorney acted ineffectively in failing to move for an instructed verdict or that he suffered any prejudice as a result of this failure. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding counsel has no obligation to make futile motions).

### 3. Failure to Object to Dynamite Charge

Petitioner contends he received ineffective assistance of counsel because his attorney failed to object to (I) the trial court's dynamite charge, given during the punishment phase of trial and (ii) the court reporter's failure to record the dynamite charge.

### a. The Constitutionally of the Dynamite Charge

Supplemental charges, known as *Allen* or "dynamite" charges, have long been accepted. *See, e.g.*, *Lowenfield v. Phelps*, 484 U.S. 231, 239, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). For a petitioner to demonstrate constitutional error in an *Allen* charge, he "must establish that the court's charge, under the totality of the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair." *Montoya v. Scott*, 65 F.3d 405, 409 (5th Cir. 1995).

Petitioner's assertion that the trial judge gave an *Allen* charge to the jury during the punishment phase even though such a charge is not contained in the Reporter's Record appears to be correct. The record of the punishment phase reflects the following:

> THE COURT:     Ladies and gentlemen, at this time, I'll ask that you
> retire to the jury room to consider your verdict. And
> the bailiff will bring to you the Charge here in just a
> moment.
>
> (The jury retired to deliberate at 4:46 p.m.)
>
> (The jury returned to the courtroom with a verdict at 6:16 p.m.)

THE COURT:          I understand that the jury has reached a verdict at this
                    stage of the trial; is that correct?

(RR, vol. 5, pg. 48). Thus the Reporter's Record does not indicate the trial court gave any *Allen*

charge during the punishment stage of the trial. The Clerk's Record, however, does contain a note

from the jury foreperson, which reads: "Two people will not change their minds and vote for life.

They would like less than 25 years. Ten people would like and voted for life. All have voted true

on both enhancements." (Clerk's Record [hereinafter CR], pg. 99). The Clerk's Record additionally

contains a file-stamped "Supplemental Charge of the Court," which reads:

LADIES AND GENTLEMEN OF THE JURY:

You are instructed that in a case of this nature it is not unusual for your
deliberations to take a considerable amount of time.

You are further instructed that in a large portion of the cases absolute
certainty cannot be expected. Although the verdict must be based upon proof beyond
a reasonable doubt, and although the verdict must be the individual verdict of each
juror, and not a mere acquiescence in the conclusion of other jurors, each juror
should show a proper regard to the opinion of the other jurors. You should listen,
with a disposition to be convinced, to the arguments of the other jurors. You should
consider whether or not you are basing your opinion on speculation or surmise and
not on the evidence in this case.

If this jury finds itself unable to arrive at a unanimous verdict, it will be
necessary for the Court to declare a mistrial and discharge the jury. The indictment
will still be pending, and it is reasonable to assume that the case will be tried again
before another jury at some future time. Any such future jury will be impaneled in
the same way this jury has been impaneled and will likely hear the same evidence
which has been presented to this jury. The questions to be determined by that jury
will be the same questions confronting you, and there is no reason to expect that the
next jury will find these questions any easier to decide than you have found them.

With this additional instruction, you are requested to continue your
deliberations in an effort to arrive at a verdict that is acceptable to all members of the
jury, if you can do so without doing violence to the conscience of any individual
juror.

SIGNED AND SUBMITTED this 9th day of August, 2005.

(*Id.*, pgs. 97-98).  The Supplemental Charge is signed by the judge who presided over the jury trial. (*Id.*, pg. 98).  According to petitioner, however, the trial judge also made the comment, "So two of you are holding out?  I really don't see how all of you could agree about the enhancement, yet quibble about punishment . . . really doesn't make sense to do that."  (*Amended Petition*, pg. 13, ellipses in original).  Neither the Reporter's Record nor the Clerk's Record reflect these comments were ever made.

The Court's review in this case is confined to the record before the state court at the time it denied petitioner's habeas corpus application.  *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  This Court has compared the *Allen* charge in the Clerk's Record, which was apparently given in petitioner's trial to other *Allen* charges challenged on constitutional grounds. The instruction contained in the Clerk's Record and given in this case at the punishment phase of the trial was not so coercive as to deprive petitioner of a fundamentally fair trial.  *See Lowenfield*, 484 U.S. 231, 108 S.Ct. 546; *Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965); *Boyd*, 45 F.3d at 878-84; *Byran v. Wainwright*, 511 F.2d 644, 645 (5th Cir. 1975).  It does not order the jury to reach a determination, but urges the jurors to continue their deliberations.  It allows a juror to only make a decision that does not "do violence" to his or her conscience.  While the record fails to provide the context in which this charge was given, petitioner does not allege any circumstances that would possibly make the context of the charge unconstitutional, especially in light of the charge itself, which, as discussed above, was not unconstitutionally coercive.  *See Martin v. Estelle*, 546 F.2d 177, 179-80 (5th Cir. 1977).  The record contains no indication that an objection to the *Allen* charge was warranted.  *See Koch*, 907 F.2d at 527.  Petitioner has failed to demonstrate deficient performance by his attorney.  *See Strickland*, 466

U.S. at 689, 104 S.Ct. at 2065.

Petitioner also fails to demonstrate prejudice. Petitioner contends the trial judge made additional statements when he gave the *Allen* charge. Because those comments are not on the record, this Court cannot take as true petitioner's assertion that the comments were, in fact, made. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (holding "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value"). Moreover, these comments were not on the record before the state courts, making it impossible for this Court to make any decision based upon the non-record evidence. *See Cullen*, 131 S.Ct. at 1398.

Even if petitioner's unsupported allegation that the trial judge made these additional comments not recorded by the Court Reporter is true, those remarks as restated by petitioner in his pleadings to this Court would not coerce a jury to the point of constitutional prejudice. The trial judge's remarks, according to petitioner, did not tell the minority jurors to concede their opinions to the majority. In fact, it did not tell the jurors to do anything. It was more of a remark on the impasse than a coercive instruction to take a specified course of action. The jury's ultimate decision to sentence petitioner to thirty-five years instead of the minimum twenty-five years or the maximum ninety-nine years indicates both the minority and majority jurors compromised (the majority more so than the minority), which is exactly what the *Allen* charge urged. While the trial judge's comments, if actually made, may have been improper, they did not constitute reversible error and/or prejudice warranting federal habeas corpus relief. Petitioner has failed to show any prejudice, even if his allegations were true. Petitioner has not shown how the state court's determination was contrary to constitutional law or constituted an unreasonable determination of the facts. *See* 28

U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.

   b.  Failure to Object to Court Reporter not Transcribing *Allen* Charge

Petitioner next contends his attorney rendered ineffective assistance by not objecting to the court reporter's failure to transcribe the *Allen* charge proceedings.  When claiming a constitutional violation related to an incomplete or nonexistent transcript, the burden is on the petitioner to demonstrate particularized need for the requested transcript.  *See Woods v. Butler*, 847 F.2d 1163, 1168 (5th Cir.), *cert. denied*, 488 U.S. 970 (1988).

Initially, it is incorrect to say the *Allen* charge was not recorded.  The charge was included in the Clerk's Record.  (CR, pgs. 97-98).  It was not, however, included in the Reporter's Record. The court reporter's failure to include the *Allen* charge proceedings in both the Clerk's Record and the Reporter's Record puts petitioner in an unenviable position.  First, as discussed earlier, this Court is prohibited from simply taking as true petitioner's representations about what occurred during the punishment proceedings without any evidence on the record.  *See Ross*, 694 F.2d at 1011 (holding "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value").  Because the record is incomplete, this Court is unable to determine whether petitioner's attorney actually failed to object to the court reporter's absence, if in fact the court reporter was absent.  Without any record evidence in support of his argument, petitioner's argument is not viable.  *See Pinholster*, 131 S.Ct. at 1398.

Even if the Court were able to conduct further review of this contention, petitioner's claim does not warrant federal habeas corpus relief.  First, while the court reporter is tasked with recording all courtroom proceedings, petitioner has not shown how his attorney was deficient in failing to ensure the proceedings were recorded in both the Clerk's Record and Reporter's Record (assuming

the attorney in fact failed to object to the reporter's absence).  Moreover, petitioner has not shown

how the failure to make sure the *Allen* charge was included in the Reporter's Record prejudiced him.

As outlined above, the *Allen* charge contained in the Clerk's Record was not coercive.  What

petitioner contends the trial judge said was not coercive.  Petitioner has not shown how his

attorney's failure to object to the absence of a transcription of non-prejudicial comments prejudiced

him.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Petitioner cannot demonstrate his attorney failed to object to the court reporter's absence.

Beyond that shortcoming, petitioner has not shown his attorney's performance was deficient in

failing to ensure a complete transcript existed nor has he demonstrated prejudice.  Petitioner has not

shown how the state court's determination of this issue was contrary to constitutional law or

constituted an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d); *Harrington*, 131

S.Ct. at 784.

### 4.  Failure to Investigate Enhancement Paragraphs

Petitioner contends he received ineffective assistance of counsel because his attorney failed

to investigate the enhancement paragraphs of the indictment.  The record reflects petitioner's

conviction was enhanced by a 1996 conviction for delivery of a simulated controlled substance and

a 1999 conviction for possession of a controlled substance.  (CR, pg. 5).  According to petitioner,

the 1996 conviction did not become final on April 11, 1996, as stated in the indictment, but instead

became final on May 8, 1996.  Petitioner contends the 1999 conviction was the result of plea

negotiations between himself and the prosecutor and that his appointed attorney rendered ineffective

assistance because the attorney failed to investigate the facts of the case or interview any witnesses.

As to the 1996 conviction, the record reflects petitioner was, in fact, convicted on April 11,

1996 in cause number 32,730 out of the 108th District Court of Potter County, Texas, of delivery

of a simulated controlled substance.  (RR, vol. 5, State's Exhibit 4A).  The paperwork in the case

was signed by the trial judge on May 8, 1996, but the actual conviction date, as properly alleged in

the indictment, was April 11, 1996.  (*Id.*).  Petitioner's trial attorney was not ineffective because

there was no mistake in the indictment to which his attorney could have objected.  Additionally, any

issue regarding a variance between the two dates is not a constitutional issue cognizable on federal

habeas corpus review.  *See Rubio v. Estelle*, 689 F.2d 533, 536 (5th Cir. 1982).

As to the 1999 conviction, the record reflects petitioner was convicted, after pleading guilty,

on May 3, 1999 of possession of a controlled substance.  (RR, vol. 5, State's Exhibit 5).  Petitioner

was appointed counsel.  (*Id.*).  Defendant, his attorney, and the prosecutor each agreed in writing

to defendant's guilty plea, to the allegations in the indictment, to the waiving of a jury trial, and to

the submission of the case to the court.  (*Id.*).  Petitioner did not appeal this conviction nor did he

challenge it by way of a habeas corpus petition in state or federal court.  Petitioner offers nothing

more than his unsupported, conclusory statement that he received ineffective assistance of counsel

in the case.  When prior convictions are collaterally attacked, the judgments reflecting those

convictions are presumed to be regular, and the accused bears the burden of defeating that

presumption.  *Sones v. Hargett*, 61 F.3d 410, 421, n. 19 (5th Cir. 1995).  In this case, petitioner has

not overcome the presumption of regularity that attends final judgments.  *See id.*  Because he cannot

demonstrate there was any error to object to, petitioner has failed to establish his ineffective

assistance of counsel claim relating to the enhancement paragraphs.  *See Strickland*, 466 U.S. at 687,

104 S.Ct. at 2064.  Petitioner has not shown how the state court's determination was contrary to

constitutional law or constituted an unreasonable determination of the facts.  *See* 28 U.S.C. §

2254(d); *Harrington*, 131 S.Ct. at 784.

### 5. Failure to Object to Introduction of Prior Convictions

In his next contention of ineffective assistance of counsel, petitioner states his trial attorney should have objected when the prosecutor introduced evidence of several of petitioner's prior convictions. Petitioner contends each of the prior convictions was obtained without the meaningful assistance of counsel and such convictions were therefore unavailable for impeachment purposes. At the sentencing stage of trial, where petitioner testified, the prosecutor, through a police officer's testimony, presented judgments from nine cases (excluding the convictions in the enhancement paragraphs) in which petitioner pled guilty:

- delivery of a controlled substance (petitioner was represented by an attorney),
- two offenses of possession of a controlled substance (petitioner was represented by an attorney in both cases),
- two offenses of criminal trespass (petitioner waived counsel both times),
- criminal mischief (petitioner waived counsel),
- assault (petitioner waived counsel),
- failure to identify himself to a police officer (petitioner waived counsel), and
- unlawfully carrying a weapon (petitioner waived counsel).

(RR, vol. 5, State's Exhibits 6-13).

In Texas, evidence of prior convictions is admissible at the punishment phase of trial. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). If a prior conviction was constitutionally invalid because the accused was denied the right to counsel, however, then the use of that conviction for impeachment purposes is prohibited. *Loper v. Beto*, 405 U.S. 473, 483, 92 S.Ct. 1014, 1019, 31 L.Ed.2d 374 (1972). For that rule to apply, the defendant must have been denied representation by counsel and never given the opportunity to waive representation. *Id.*

The record in this case does not support petitioner's bare assertions that he was denied the right to effective assistance of counsel in all of his prior cases. Petitioner was either represented by

counsel or waived representation in all of those prior cases.  (RR, vol. 5, State's Exhibits 9-14 (defendant "knowingly, intelligently and voluntarily waived the right to representation by counsel" in each case where he was not represented by an attorney)).  Petitioner never appealed any of his prior cases nor collaterally attacked them in a state or federal habeas corpus petition.  Apart from his singular statement that "each of the convictions were obtained without the meaningful assistance of counsel," petitioner offers nothing that could possibly call into question the effectiveness of the representation he received or the validity of his waivers of representation.  Thus, there is no merit to petitioner's contention the prior convictions were improperly used for impeachment, and he has failed to demonstrate his attorney was deficient for failing to lodge an objection to them.  *Id.* Petitioner has failed to show ineffective assistance of counsel as he alleged in relation to these convictions.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  Further, petitioner has not shown how the state court's determination of this issue was contrary to constitutional law or constituted an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.

### *C.  Ineffective Assistance of Appellate Counsel*

In his third point of error, petitioner contends he received ineffective assistance of counsel from his appellate attorney because that attorney filed an *Anders* brief and failed to raise specific issues on appeal.  Petitioner additionally contends that because the intermediate state appellate court addressed the merits of the issues petitioner raised in his *pro se* brief, filed after his attorney filed the *Anders* brief, it should have appointed substitute counsel.

An ineffective assistance of appellate counsel claim is also analyzed under the two-pronged test enunciated in *Strickland v. Washington.  Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992). Thus, as reviewed in Section IV.B above, a petitioner must demonstrate appellate counsel was

deficient, and the deficiency prejudiced his case. *Strickland,* 466 U.S. at 687. Regarding deficient representation, an attorney need not "argue every conceivable issue on appeal." *Jones v. Barnes*, 463 U.S. 745, 749, 103 S.Ct. 3308, 3311, 77 L.Ed.2d 987 (1983). To prove deficient representation in an *Anders* case, a petitioner must show a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). To prove prejudice, a petitioner "must show a reasonable probability that, but for counsel's unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

Petitioner has failed to show there was one nonfrivolous issue warranting a merits brief. *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764. Petitioner contends his appellate attorney should have challenged the legal sufficiency of the evidence. As reviewed in Section IV.A, above, such a claim is not meritorious because there was no appellate issue to raise since the prosecution presented ample evidence supporting every element of the charged offense. Additionally, when his appellate attorney filed the *Anders* brief, petitioner filed a *pro se* brief in which he contended, *inter alia*, that the evidence was legally insufficient. *Parker*, 2007 WL 1610063 at *2. The state appellate court considered petitioner's argument and determined it was meritless. *Id.* Petitioner cannot demonstrate he would have prevailed on his appeal had his appellate attorney been the one to raise the sufficiency challenge. *See Jones*, 465 U.S. at 749, 106 S.Ct. at 764. Petitioner's ineffective assistance of appellate counsel claim should be denied.

In this point of error, petitioner additionally contends the state appellate court denied him a meaningful appeal because it discussed the merits of the issues raised in petitioner's *pro se* brief. As a procedural matter, petitioner *was* represented by an attorney throughout his appeal. Appointed

counsel's *Anders* brief was accompanied by a motion to withdraw as the attorney on the case, but that withdrawal did not occur until the state appellate court conducted its review of the proceedings.

When an attorney files an *Anders* brief, it is up to the state appellate court to conduct "a full examination of all the proceedings, [and] decide whether the case is wholly frivolous." *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

> If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires.  On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Id.*

The state appellate court in this case not only reviewed the *Anders* brief and the *pro se* brief, but additionally conducted its own independent examination of the entire record.  *Parker*, 2007 WL 1610063 at *2.  It determined the case "present[ed] no meritorious grounds for review."  *Id.* Contrary to petitioner's contention that he was denied a meaningful appeal, the appellate court appears to have conducted a very thorough review of the case.  Having found the case wholly frivolous, it was permitted to affirm the judgment without appointing petitioner a new attorney.  *See Anders*, 386 U.S. at 744, 87 S.Ct. at 1400.  Petitioner has not shown how the state court's determination was contrary to constitutional law or constituted an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.

### D.  The Police Department's Investigative Procedures

In his next point of error, petitioner contends his due process rights were violated by the Amarillo Police Department's (APD's) inadequate investigative procedures.  Petitioner contends the APD should have conducted a more thorough search of the scene.  To the extent petitioner's

argument is that he was prejudiced because the police failed to find inculpatory evidence, such an argument is not logical.  If in fact petitioner is contending a better search would have given more credibility to his defense, which was that he never had a gun or pointed a gun at Patel, such argument ignores the fact that three eyewitnesses testified petitioner pointed a gun at Patel.  Even without the additional eyewitness testimony, however, petitioner has failed to demonstrate a due process violation.

Even if the Court considered petitioner's claim to be a claim of some sort of misconduct by the police, the claim would fail.  The United States Supreme Court has recognized that outrageous misconduct by law enforcement officials can rise to the level of a due process violation.  *See Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952).  To rise to the level of a due process violation, the misbehavior must "so shock[] the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States."  *Moran v. Burbine*, 475 U.S. 412, 433-34, 106 S.Ct. 1135, 1147, 89 L.Ed.2d 410 (1986).  "[T]he judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause."  *United States v. Voigt*, 89 F.3d 1050, 1065 (3d Cir.), *cert. denied*, 519 U.S. 1047 (1996).

In this case, APD officer Brice Stater testified that it was dark when he arrived on the scene and was told to search for a gun.  (RR, vol. 4, pg. 121).  He said he "searched the back alley all the way to the west end of the motel." (*Id.*).  He "checked dumpsters, weeds along the motel, any place that looked like someone might hide a gun." (*Id.*, pg. 122).  When he arrived at the west end of the motel, he encountered several obstacles because there was "a lot of stuff in the way." (*Id.*).  He searched the roof and looked inside all the air conditioner units in the windows of each room . (*Id.*).  The officer stated he looked every place he thought to look, but never found a gun.  (*Id.*, pg. 125).

At trial, petitioner used the APD's failure to discover a handgun in his defense to support an argument he never possessed one.  (*Id.*, pg. 164).

Now, petitioner appears to argue the investigative procedures, which he favorably relied upon at trial, were inadequate.  Petitioner has failed to demonstrate a due process violation.  The police officer's conduct of searching every place he could possibly search does not at all shock the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the State of Texas.  *See Moran*, 475 U.S. at 433-34, 106 S.Ct. at 1147.  The police conduct in this case was not so offensive that it violated the Due Process Clause.  *See Voigt*, 89 F.3d at 1065.  Petitioner has not shown how the state court's determination of this issue was contrary to constitutional law or constituted an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.

### E.  Court Reporter's Failure to Transcribe Supplemental Charge

In his fifth point of error, petitioner contends his due process rights were violated by the court reporter's failure to transcribe improper comments the trial judge made to the jury during the submission of the *Allen* charge.  Petitioner avers the failure to transcribe these comments constructively denied him the right to appeal because he was unable to raise an issue concerning the impropriety of the trial court's comments.

As reviewed in Section IV.B.3 above, petitioner's appointed appellate counsel filed an *Anders* brief.  In that brief, petitioner's attorney pointed out the *Allen* charge was not in the record, but concluded any error was not preserved because petitioner's trial attorney failed to object to the supplemental charge on the record.  The appellate attorney additionally discussed whether petitioner's attorney was ineffective for failing to object to the Court Reporter not transcribing the

*Allen* charge, but concluded there was no ineffective assistance because the result of the trial would not have been any different if the attorney had objected.

The Court of Appeals concluded the appellate attorney had "conducted a thorough review of the record." *Parker*, 2007 WL 1610063 at *1.  It also stated: "We have made an independent examination of the entire record to determine whether there are any arguable grounds which might support the appeal.  We agree it presents no meritorious grounds for review." *Id.* at *2.  The Court of Criminal Appeals denied the petition for discretionary review.  When petitioner filed both of his state writ of habeas corpus applications, he presented exactly the same argument regarding what the trial judge said and how his attorney should have objected.

Petitioner filed a *pro se* brief with the appellate court, a petition for discretionary review, and two state habeas corpus applications.  Thus, petitioner knew of and persistently exercised his right to appeal raising the same arguments.  Clearly, the appellate court and the Court of Criminal Appeals were aware, from petitioner's pleadings, of the absence of the supplemental charge in the Reporter's Record yet determined any error did not warrant relief.  The fact that the state courts did not grant petitioner relief in spite of his arguments is not a basis for the contention that he was denied a meaningful right to appeal.  Petitioner exercised his right to appeal, and all the state courts knew and understood that the Reporter's Record was incomplete.  This point of error is without merit.

Additionally, this Court has evaluated all of petitioner's contentions on this argument.  In Section IV.B.3 above, this Court determined the instructions as stated in the Clerk's Record and as alleged by petitioner were not coercive.  The Texas courts likewise evaluated the record and petitioner's allegations and determined there was no harm in the incompleteness of the Reporter's

Record.  To reiterate Section III above, this Court cannot say the Texas court's refusal to grant relief on an issue that is not meritorious was contrary to or involved an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).

### F. Actual Innocence

Petitioner titles his sixth point of error as "Actual Innocence," under which the entirety of petitioner's argument is "in light of the facts and circumstances surrounding this case, but for the violation of his constitutional rights to due process and the effective assistance of counsel no 'rational trier of fact would have found him guilty.'" (*Amended Petition*, pg. 16).

A free-standing actual innocence claim is not cognizable on federal habeas review.  *See Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  A federal habeas court *does not* concern itself with petitioner's guilt or innocence—that is an issue of fact for determination by the state courts, not the federal courts on habeas review.  *Id.*  The *sole* question a federal court considers on habeas review is whether the petitioner's federal constitutional rights were violated.  *Id.*  Therefore, any claim by petitioner of actual innocence fails.  *See id.*, 113 S.Ct. at 860.  Additionally, petitioner presents no argument of a procedural error qualifying him for the narrow actual innocence exception set forth in *Schlup*.  *See Schlup v. Delo*, 513 U.S. 298, 314, 115 S.Ct. 851, 860, 130 L.Ed.2d 808 (1995).  To the extent petitioner is actually meaning to argue a due process violation, this Court has already established in Section IV.A above that he has not demonstrated any such violation.  *See Jackson*, 443 U.S. 307 at 319, 99 at 2789.  This point of error is meritless.

### G. Prosecutorial Misconduct

In his seventh point of error, petitioner asserts "he was denied due process when the state

failed to correct the perjurious testimony of its primary witness." (*Amended Petition*, pg. 16).  The

Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using perjured

testimony.  *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

In order to prove the state violated the Fourteenth Amendment by relying on such testimony, a

defendant must demonstrate:  (1) that a witness for the State testified falsely; (2) that such testimony

was material; and (3) that the prosecution knew the testimony was false.  *Id.* at 153-54, 92 S.Ct. at

766.

In this case, petitioner claims there were four instances of perjury.  First petitioner contends

Patel's testimony that he had never before seen petitioner was false.  As petitioner points out, the

prosecutor, in his opening statement, said Patel had asked petitioner to leave on prior occasions.

(RR, vol. 4, pg. 5).  One of the state's other witnesses said she had seen the two, petitioner and Patel,

together on occasions before the incident.  (*Id.*, pg. 147).  Assuming for the sake of argument that

Patel's testimony was false and that the prosecution knew it was false, petitioner fails to demonstrate

how such testimony was material.  *See Giglio*, 405 U.S. at 153, 92 S.Ct. at 766.  Whether the two

men knew each other before the incident in question was ultimately irrelevant to whether the

incident actually occurred as alleged in the indictment.

Second, petitioner contends Patel's children lied when they testified they saw petitioner point

a gun at Patel.  Petitioner has failed to demonstrate the testimony of these witnesses was false and

that the prosecution knew it was false.  Petitioner's bare allegations that the witnesses concocted the

story of him brandishing a gun is insufficient to support a federal habeas corpus claim.  *See Ross v.

Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (holding "[a]bsent evidence in the record, a court

cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to

be of probative evidentiary value"). Two witnesses testified they did not see petitioner with a gun, but their testimony was questionable. (RR, vol. 4, pgs. 113, 151, 157). In any event, conflicts in testimony are insufficient to establish perjury. *Kutzner v. Johnson*, 242 F.2d 605, 609 (5th Cir. 2001).

Third and fourth, petitioner points to conflicts between the testimony of Patel and Jessica Padilla, the lady who initially approached Patel complaining of stolen jewelry. Patel and Jessica Padilla gave differing testimonies on how long Jessica had been staying at the motel. (RR, vol. 4, pgs. 40, 104). Patel wavered on his testimony about whether Jessica Padilla was a prostitute. (*Id.* pgs. 40-41). While petitioner argues Jessica Padilla admitted she was a prostitute, the Court is unable to find such testimony in the record, including the portion of the record cited by petitioner. In any event, the length of Jessica Padilla's patronage of Patel's hotel and whether she was a prostitute had nothing to do with whether petitioner pointed a gun at Patel and threatened to shoot him after refusing to leave the motel and becoming violent. Assuming part or all of Patel's or Jessica Padilla's testimony was false, and assuming the prosecutor knew it was false, petitioner has failed to demonstrate how such testimony was material. *See Giglio*, 405 U.S. at 153, 92 S.Ct. at 766. Petitioner has not shown how the state court's determination of this issue was contrary to constitutional law or constituted an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d); *Harrington*, 131 S.Ct. at 784.

## V.
## <u>RECOMMENDATION</u>

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed

by petitioner RONALD EUGENE PARKER be DENIED.

VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of December, 2011.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).